**Clinton Earl TWOMEY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 49628.**

Court of Criminal Appeals of Texas.

March 26, 1975.

Rehearing Denied April 16, 1975.

Ross H. Hemphill, Dallas, for appellant.

John Lawhon, Dist. Atty., and Alan L. Levy, Asst. Dist. Atty., Denton, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

Appellant, in a trial before a jury, was convicted of aggravated rape.[1] Punishment was assessed at thirty years.

In his second and third grounds of error, appellant contends that the evidence is insufficient to prove lack of consent of the prosecutrix, and to prove that she did not put forth every exertion and means within her power to resist the commission of the alleged rape by appellant.

The record reflects that at about 10:30 on the morning of March 15, 1974, appellant came to an apartment complex in Den-

1. The offense occurred on March 15, 1974, after the effective date of the new Texas Penal Code enacted in 1973. See V.T.C.A. Penal Code, Sec. 21.02; Sec. 21.03.

ton of which prosecutrix, a 21-year-old married woman, was the manager, to see about renting an apartment for himself and his wife. She had never seen him prior to this, and neither of the two was acquainted with the other. Prosecutrix testified that while she was showing him the interior of a vacant apartment, appellant suddenly grabbed her around her throat and started choking her. In a struggle which ensued, she scratched his chin, and thereafter fell on a nearby bed. He sat on her and exhibited a pocketknife with a five-inch blade in a threatening manner and told her that if she screamed, he would hurt her. He then ordered her to take off her slacks and underpants. She became afraid that if she did not do so, he would kill her. She testified that she removed her pants and "panties" because I wanted to live; I thought that he would kill me if I didn't do what he said. . . . When I first saw that knife, I was just paralyzed, because the only thing I could think of was I was gonna die." She further said: "I didn't scream, because he said if I screamed he would threaten my life, and I figured my life was more important than trying to risk my life."

At the time he was threatening prosecutrix, causing her to believe she was in danger of losing her life unless she complied with his orders, appellant kept the knife in his hand held close to her body in a threatening manner. After both had undressed, and she had lain down on the bed, appellant placed the knife on a dresser within arm's length of the bed, and proceeded to have sexual intercourse with her. She testified that she did not struggle while on the bed, since she was afraid that he would kill her. Each then dressed and walked back toward her office. Before getting there, she saw the owner of the complex, and called out to him: "Look at that man! Look at that man." Appellant then got in his car and sped off, screeching his tires. Prosecutrix reported the rape to the owner, and police officers were notified. The officers who came immediately to the apartment to investigate the occurrence

testified that prosecutrix was upset, crying, and hysterical when they talked with her. They observed that her throat was swollen where she had been choked.

Appellant testified, admitting the act of sexual intercourse with prosecutrix. He stated, however, that it was with her complete consent and cooperation; in fact, he testified to conduct on her part constituting practically an invitation for him to have intercourse with her.

It is appellant's contention that the evidence fails to prove the necessary element of lack of consent, and also fails to show that she resisted his efforts with all the exertion and means within her power.

The issue of consent was submitted to the jury on the theories of force and threats, in accordance with V.T.C.A. Penal Code, Sec. 21.02(b)(1) and (2), which provide:

"(b) The intercourse is without the female's consent under one or more of the following circumstances:

"(1) he compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances;

"(2) he compels her to submit or participate by any threat that would prevent resistance by a woman of ordinary resolution."

Other subsections of this Section 21.02 are not applicable to the factual situation in this case.

Subsection (b)(1), supra, deals exclusively with force, and is substantially similar with Article 1184 of the prior penal code. Subsection (b)(2) concerns threats, and basically preserves Article 1185 of the prior code, except that instead of providing that the threat "reasonably create a just fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength and other circumstances of the case," subsection (b)(2) requires only that the threat be such that it would

"prevent resistance by a woman of ordinary resolution."

Considering the evidence most favorable to the verdict, the instant case is sufficient to show that the appellant used a combination of force and threats to compel prosecutrix to submit. Fact issues were submitted to the jury and answered against the appellant concerning the use of force and threats by appellant and consent to the act by prosecutrix.

In DeVonish v. State, Tex.Cr.App., 500 S.W.2d 800, we quoted with approval from 4 Branch 2d p. 281, Sec. 1956, as follows:

"When both force and threats are alleged, and there is evidence of each, it is not necessary that either the force or the threats alone measure up to the standard of the statutory definition; the cogency which one contributes to the other may be sufficient to constitute all that is required." Citing authorities.

See also Drakes v. State, Tex.Cr.App., 505 S.W.2d 892; Knox v. State, Tex.Cr.App., 487 S.W.2d 322; Gorman v. State, Tex.Cr.App., 480 S.W.2d 188; Whitaker v. State, Tex.Cr.App.., 467 S.W.2d 264; Todd v. State, Tex.Cr.App., 466 S.W.2d 559.

We conclude that the evidence is sufficient to establish that the sexual intercourse was without the consent of prosecutrix, and that she was compelled to submit by force and threats as those terms are defined in V.T.C.A. Penal Code, Sec. 21.-02(b)(1) and (2), supra.

Appellant's second and third grounds of error are overruled.

In his first ground appellant complains of alleged prejudicial questions and answers that occurred when the State was examining its witness Burke, a detective.

While the State, on direct examination, was questioning detective Burke about items of clothing worn by appellant at the time of the offense and seized when he was arrested, the following colloquy occurred:

"Q. (By prosecuting attorney) Detective Burke, do you know where those pants are now?

"A. It is my understanding, sir, that they are in the crime lab in Dallas County.

"Q. Okay. And you were not able to obtain those?"

At this point, appellant objected on the ground that "this is highly inflammatory and prejudicial."

The court sustained the objection and instructed the jury not to consider the question, but overruled a motion for mistrial.

Appellant contends that "the inferences and implications planted in the minds of the jurors are inescapable, namely, that appellant was the subject of investigation for other crimes, and that the State had evidence damaging to appellant that would not be introduced at trial." Such contention is without merit, and is overruled.

In the event such "inferences and implications" could reasonably be drawn, the prompt action of the trial court in sustaining the objection and instructing the jury to disregard the question cured any harm, if any, that might have been caused. Hunt v. State, Tex.Cr.App., 511 S.W.2d 954; Hartman v. State, Tex.Cr.App., 507 S.W.2d 553; Cozby v. State, Tex.Cr.App., 506 S.W.2d 589.

The first ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.