Joseph Lynn **ROGERS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 57204.

Court of Criminal Appeals of Texas, Panel No. 3.

Jan. 10, 1979.

Hugh E. O'Fiel, Beaumont, for appellant.

Tom Hanna, Dist. Atty., and William G. Ogletree, Asst. Dist. Atty., Beaumont, for the State.

Before DOUGLAS and TOM G. DAVIS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for aggravated rape. V.T.C.A. Penal Code, Sec. 21.03. Punishment was assessed by the jury at 30 years.

In addition to the brief filed by the appellant's appointed counsel, appellant has filed a pro se brief raising an additional ground of error. Although this pro se brief was neither timely filed nor filed with the clerk of the trial court, we have concluded that this contention should be considered in the interest of justice. Art. 40.09, Sec. 13, V.A.C.C.P.

Appellant challenges the sufficiency of the evidence to prove that the rape was aggravated. Appellant does not contend that the evidence was insufficient to support a conviction for rape under V.T.C.A. Penal Code, Sec. 21.02, but only maintains that the evidence was insufficient to prove that he compelled "submission to the rape by threat of death [or] serious bodily injury." Sec. 21.03(a)(2). This contention requires an in-depth review of the evidence regarding appellant's actions and the threats made.

On direct examination of the prosecutrix, the following testimony was elicited:

"Q. What did you do after he said it was the mail man?

"A. I told him just a minute and I went back into the bedroom and put my blouse back on and went to the door and I answered the door.

"Q. Did you open the door all the way or what did you do in that regard?

"A. I opened the wooden door and before I had a chance to say anything I was hit in the face.

"Q. You were hit in the face from a blow from some instrument or what?

"A. His fist.

"Q. We assume then this was a male at the door?

"A. Yes, sir.

"Q. And this person hit you in the face with his fist?

"A. Yes, sir.

"Q. Did he knock you unconscious?

"A. No, he knocked me back up against the dining room table and I was on the floor.

"Q. This person came into your apartment?

"A. Yes, sir.

"Q. What did he do when he came in?

"A. I was raped.

\*  \*  \*  \*  \*  \*

"Q. How did your clothes come to be off?

"A. He told me to take them off.

"Q. Did he ask you to take them off or tell you to take them off?

"A. He told me to take them off.

"Q. What did you do?

"A. I told him no.

"Q. What did he do at this point?

"A. He told me I had better take them off right now.

"Q. Did you feel threatened in any manner?

"A. Yes, I felt threatened.

"Q. Did you take your clothes off or did he?

"A. I started to take them off and then he helped.

"Q. After he took your clothes off what happened at that point?

"A. I was raped.

\*  \*  \*  \*  \*  \*

"Q. At any time during the intercourse did he tell you to shut up or make any threats against you?

"A. He told me to keep quiet and not make any noise.

"Q. Were you making any noises?

"A. I guess I was because that's when he told me to be quiet.

\*　　\*　　\*　　\*　　\*　　\*

"Q. D_____, were you afraid at this point?

"A. Yes, I was.

\*　　\*　　\*　　\*　　\*　　\*

"Q. What happened at that point?

"A. After he got the beer?

"Q. Yes, ma'am.

"A. He was getting ready to leave and I still had the bedspread around me and I went into the living room and he warned me not to call the police and at that time the phone rang. It was my husband. At that time we weren't married yet, and he was checking on me, I guess, and he wanted to know how I was and I didn't say anything. He was standing there listening and we had our little conversation and then Bryan hung up, and he told me again not to call the police and he said he knew what kind of car I drove and he named the make it was and said that if I called the police I would find something waiting for me under the hood one day.

"Q. Is that what he said immediately before leaving?

"A. Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

"Q. And at the time this intercourse took place you were in fear for your life?

"A. Yes, sir.

"Q. Were you in fear that he might hurt you badly?

"A. Yes, sir.

"Q. Did you have any visible injuries as a result of this?

"A. Yes, sir, I had two black eyes and a swollen nose.

"Q. They, in fact, x-rayed your nose in the hospital, did they not?[1]

"A. Yes, they did."

On cross-examination, the following testimony was given by the prosecutrix:

"Q. You mentioned a towel that he wrapped around his fist, is that correct?

"A. Yes, sir.

"Q. Do you know where that towel came from?

"A. No, sir.

"Q. Do you know where the towel is now?

"A. No, sir.

"Q. And it's your testimony, Ms. C_____, that as soon as you opened the door that's when you were hit?

"A. Yes, sir.

"Q. Were you able to see this individual before he hit you?

"A. Just a glance just for a split second.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Concerning what this individual told you, Ms. C_____, as far as threats and things of that nature, can you tell me specifically any threats the defendant may have made to you on that occasion?

"A. Well, first he threatened to hurt me if I wasn't quiet, if I didn't keep my mouth shut.

"Q. When he threatened to hurt you did he show you any type of weapon?

"A. No, he didn't.

"Q. He just verbally told you he would hurt you?

"A. Yes, sir.

"Q. Did he say in what manner he would hurt you?

"A. He just said he would hurt me.

"Q. Did he at any time come out and say he would kill you if you didn't submit to his acts?

"A. No.

1. The record does not reflect the results of the x-ray.

**558**

"Q. And you never saw any weapon of any type on this individual?

"A. No.

"Q. And, in fact, the only blow he struck to you was when he first appeared at the door?

"A. Yes, sir.

"Q. He never hit you or hurt you in that manner after that?

"A. No."

The issue presented is whether the blow inflicted by the appellant upon entry and the threat to "hurt" the prosecutrix are sufficient to support a finding that he threatened imminent and serious bodily injury.

V.T.C.A. Penal Code, Sec. 1.07(a)(34), defines serious bodily injury as:

" 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

Thus, unless the acts of the appellant threatened serious bodily injury as defined above, the conviction for aggravated rape cannot stand.

In *Blount v. State*, 542 S.W.2d 164, this Court was faced with a similar situation. The rape victim in *Blount* had received a bruise on her arm from being dragged to the bedroom by two men that had broken into her trailer. No weapons were exhibited and no present threats of death were made.

The Court, in considering whether threats of serious bodily injury were made, stated the following:

"A threat can be communicated by action or conduct as well as words. *Most v. State*, Tex.Cr.App., 386 S.W.2d 537; *May v. State*, 172 Tex.Cr.R. 490, 358 S.W.2d 379. In the instant case, however, there was no evidence of any threat by any means that rose to the level of the quoted statutory definition. No weapons were used; the prosecutrix was not mistreated to the extent that serious bodily injury might have resulted, and no verbal or written threats of such nature were communicated.

"It is necessary, therefore, that the judgment be reversed. See *Zamora v. State*, supra [Tex.Cr.App., 449 S.W.2d 43]; *May v. State*, supra; cf. *Banks v. State*, [Tex. Cr.App.] 530 S.W.2d 940; *Twomey v. State*, [Tex.Cr.App.] 520 S.W.2d 784; *Lewis v. State*, [Tex.Cr.App.] 503 S.W.2d 806; *DeVonish v. State*, [Tex.Cr.App.] 500 S.W.2d 800; *Broadway v. State*, [Tex. Cr.App.] 418 S.W.2d 679; *Most v. State*, supra." 542 S.W.2d at 166.

The Court concluded that although the evidence was sufficient to prove rape under V.T.C.A. Penal Code, Sec. 21.02, it was insufficient to show an aggravated rape under Sec. 21.03, supra, and thus the case was reversed.

In *Little v. State*, 573 S.W.2d 775, this Court found the evidence sufficient to support a conviction for aggravated rape. In *Little*, the prosecutrix was being helped by the defendant in repairing a flat tire on her car when she "felt something strike her head" and lost consciousness. She awoke to find the defendant engaged in intercourse with her. The defendant threatened to kill her when she asked him a question; she then again lost consciousness. It was shown that she had suffered severe bruises to her face, had cuts in and around her mouth, and around her hose and left ear, and that her jaw and some teeth had been broken. She was unable to testify as to what the appellant hit her with, however. The Court in *Little* held the blow delivered in a manner as to break her jaw and render her unconscious, coupled with the threats on her life, were sufficient proof to support the conviction for aggravated rape.

In *Brown v. State*, 576 S.W.2d 820 (1978), this Court found that holding a gun to the prosecutrix's head during the rape was sufficient to show the aggravating circumstances as required under Art. 21.03, supra. In *Banks v. State*, 530 S.W.2d 940, this Court found that a showing that the defendant had a pistol and threatened to kill the rape victim was sufficient to show a threat of serious bodily injury.

In *Church v. State*, Tex.Cr.App., 552 S.W.2d 138, a showing that the defendant placed a knife to the victim's throat was sufficient to show the requisite threat under Art. 21.03, supra. A combination of choking the victim, and then threatening the victim with a knife, was sufficient to support a conviction for aggravated rape in *Twomey v. State*, Tex.Cr.App., 520 S.W.2d 784.

The cases above illustrate the proof necessary for a finding of a threat of serious bodily injury. In each case where this Court held the evidence was sufficient to support a conviction under Sec. 21.03, there was a showing that a gun or knife was used, or a threat to kill the victim was made, or serious bodily injury was inflicted, or a combination of two or more of these factors.[2] Only in *Blount*, supra, where the proof did not show that any of these three acts had occurred, did the Court fail to find the evidence supported a conviction for aggravated rape. In the present case, as in *Blount*, no showing has been made that any weapon was used, or a threat to kill made, or serious bodily injury inflicted.

The injuries testified to by the prosecutrix were not serious bodily injuries as defined by Sec. 1.07(a)(34), supra. Her own testimony also establishes that no threat on her life was made, nor was any knife, gun, or other weapon used. We find that the evidence was insufficient to prove the aggravated circumstances required under Sec. 21.03, supra.

The only threat that could rise to the level of a threat of serious bodily injury was made as the appellant was leaving. The appellant's threat that the victim would find something "waiting under the hood" of her car if she called the police was not one made to compel submission, how-

ever, but a threat of future harm. A threat of future harm is not a threat of imminent harm, thus it will not support a finding of aggravating circumstances. *Blount v. State*, 542 S.W.2d at 166.

We hold only that the evidence was insufficient to prove that the appellant threatened death or serious bodily injury to the victim, and do not find that the evidence was insufficient to prove rape under Sec. 21.02. This is important in light of the Supreme Court decisions in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), which bar further prosecution when the evidence is found insufficient to support a conviction. It should be noted that the Supreme Court did not reach the issue of whether the defendant could be retried for the lesser included offense, but held only that another trial for the same offense was barred by double jeopardy. *Greene v. Massey*, 98 S.Ct. at 2154, n. 7.[3]

The judgment is reversed. No further prosecution shall be had for aggravated rape under Sec. 21.03, supra.

DOUGLAS, Judge, concurring.

The result reached in the case is correct; however, there should be no reliance upon *Blount v. State*, 542 S.W.2d 164 (Tex.Cr. App.1976), because the deaf victim in that case testified that a knife was used during the transaction.

2. In *Seaton v. State*, 564 S.W.2d 721, this Court found that the evidence was sufficient to support a conviction for aggravated rape of a child. Although the evidence was unclear as to threats made, and there was no showing of a weapon used, the evidence revealed that the defendant had compelled the 9-year-old prosecutrix to submit to intercourse by beating her and had continued to beat her during the act.

Considering the age of the prosecutrix and the serious consequences of any attack on a child, we cannot see that this holding is inconsistent with our holding today.

3. See *Moss v. State*, Tex.Cr.App., 574 S.W.2d 542 (1978) (on appellant's motion for rehearing).