Willie D. BERRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 55792.

Court of Criminal Appeals of Texas, Panel No. 1.

April 18, 1979.

However, it remains the rule of law in Texas, and therefore must be applied.

Kerry P. Fitzgerald, Dallas, for appellant.

Henry M. Wade, Dist. Atty., John G. Tatum, James K. Johnson and John Ovard, Asst. Dist. Attys., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and W. C. DAVIS, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for aggravated rape. V.T.C.A., Penal Code, § 21.03. The jury assessed punishment at life imprisonment in the Texas Department of Corrections.

 In his third ground of error, appellant contends that the evidence is insufficient to sustain a conviction for aggravated rape. He concedes that the evidence may show the commission of a rape, but contends that there is no evidence of him compelling submission by a threat of death or serious bodily injury to be imminently inflicted upon her, as required by § 21.03, supra. We disagree.

The prosecutrix testified that prior to the offense she was a college student in Colorado. She stated that she had recently come to Dallas in an internship program and, thus, had been unfamiliar with the city. She and another young woman had rented an apartment together, but had not had a telephone installed. She testified that on the night of the offense she left her apartment at about 8:00 p. m. to walk to a nearby telephone booth in order to make a call. After talking to the party she called, as she stepped out of the phone booth, she saw appellant standing next to a car nearby. She testified that it was dark at that time. She heard appellant say something to her and saw him start to approach her, and she stated that she became frightened. She testified that appellant grabbed her hard by the arm and stuck something sharp

in the back of her neck. She testified, "He told me not to do anything and he wouldn't hurt me," and she stated that he was hurting her arm and wrist. She stated that the object he stuck in the back of her neck felt like a knife, but that she could not see it. She testified that appellant told her that he would not hurt her if she would do what he said to do.

The prosecutrix testified that he then dragged her over to the car and forced her in, as she struggled with him. She stated that she was in fear for her life. She testified that he was stronger than she and that he kept repeating "just to do what I tell you and I won't hurt you." He then told her that he wanted to "make love" to her. She stated that the door on her side of the car was locked and that she was afraid to reach back and unlock it. Then, with her in the car, appellant drove around, stopping briefly to ask friends where his brother was. She was not familiar with any place appellant drove. She stated, "[w]e drove up and down the streets, some more, and whenever a car would pass, coming from the other direction, the two cars would stop, so that then they were parallel to each other, and he would just let the black people that were in the other car stare across to me so that they could get a look at me," and that nothing was ever said during this time. She testified that she "had the feeling that maybe this man was going to have a sex orgy."

After this, she stated that he drove to "the slums" and dragged her out of the car and took her into an apartment. She stated that he told her to relax, that as long as she did what he told her to, he would not hurt her. She stated that, although she had not yet seen a weapon, he kept telling her that he would not hurt her if she did what he said to do. Appellant then raped her and later drove her back to the telephone booth.

Upon cross-examination, she testified that when he first abducted her he stuck something sharp in her neck. She stated that this object was sharp and flat and that it felt like a sharp knife, forcibly pressed against her neck. She stated that he indicated to her that he had a weapon and that he was going to use it by putting the object against her neck. She testified that appellant did not verbally threaten her with death or serious bodily injury, other than to tell her that if she complied with his demands she would not be harmed.[1]

Upon review by this court, the evidence must be viewed in the light most favorable to the jury's verdict. *Rogers v. State,* 550 S.W.2d 78 (Tex.Cr.App.1977); *Clark v. State,* 543 S.W.2d 125 (Tex.Cr.App.1976); *Esquivel v. State,* 506 S.W.2d 613 (Tex.Cr. App.1974). The jury found that appellant had compelled the prosecutrix's submission to the offense by threats of death or serious bodily harm, and we hold that the evidence is sufficient to support this verdict. The term "threats" is not limited to the use of verbal aggression but may include acts amounting to an offer to use future force. Threats may be communicated by actions, words or deeds. *Seaton v. State,* 564 S.W.2d 721 (Tex.Cr.App.1978); *Church v. State,* 552 S.W.2d 138 (Tex.Cr.App.1977); *Rogers v. State,* supra; see also, *Williams v. State,* 500 S.W.2d 163 (Tex.Cr.App.1973).

In the instant case, appellant grabbed the prosecutrix hard, hurting her arm and wrist. He then stuck a sharp, flat object in the back of her neck; she testified that the object felt like a knife, forcibly pressed against her neck. Appellant repeatedly told her that if she cooperated with his demands she would not be hurt; the implication of this threat, of course, is that she *would* be hurt or harmed if she resisted. By his actions and words, appellant indicated to the prosecutrix that he had a

---

1. Appellant did not testify at the guilt or innocence stage of the trial, but he did testify in his own behalf at the punishment phase. Therein, he admitted that he was the one who confronted the prosecutrix on the date of the offense, that he forced her into his car, and that he threatened her. He also testified that he was sorry for what he had done. While this judicial admission, in itself, might constitute sufficient evidence of the aggravation under § 21.03, supra, we need not base our holding upon this alone, due to the other evidence adduced at trial.

weapon and that he would use it if she resisted. These acts, coupled with his threats, are sufficient evidence of a threat of serious bodily injury. Appellant's third ground of error is overruled.

In his first ground of error, appellant contends that the trial court erred in admitting into evidence a knife obtained pursuant to an illegal search and seizure. Officer W. F. Leichliter of the Dallas Police Department testified that on the night of October 20, 1974, he was patrolling the West Dallas area when he received radio transmissions. As a result of the messages received, he went to a location in a housing project. At this address, he observed an automobile parked off of the parking area between shrubs and a clothes line pole. The officers approached the car and observed similarities between it and the description of the vehicle for which they were looking. Further, the automobile was parked behind the house number which had been related to them. Officer Leichliter testified that as he stood outside the car looking at it, he observed a putty knife lying in plain view on the front seat. The knife was subsequently seized.

We hold that the trial court did not err in admitting the knife into evidence. The officer was standing in a public place pursuant to a lawful investigation; the knife was in plain view. A police officer may seize what he sees in plain view if he is lawfully where he is. *Clark v. State,* 548 S.W.2d 888 (Tex.Cr.App.1977); *Myre v. State,* 545 S.W.2d 820 (Tex.Cr.App.1977); *Craig v. State,* 533 S.W.2d 827 (Tex.Cr.App.1976); *Casarez v. State,* 504 S.W.2d 847 (Tex.Cr.App.1974); *Pulido v. State,* 503 S.W.2d 578 (Tex.Cr.App.1974). This contention is overruled.

In his second ground of error, appellant contends that the prosecutor committed fundamental error during argument at the hearing on punishment in making an indirect reference to the length of time which appellant would be required to serve in prison on any sentence. No such objection was voiced at trial. Error, if any, in the prosecutor's argument was waived by appellant's failure to object. *Duffy v. State,* 567 S.W.2d 197 (Tex.Cr.App.1978); *Wilder v. State,* 558 S.W.2d 883 (Tex.Cr.App.1975); *Hunter v. State,* 530 S.W.2d 573 (Tex.Cr.App.1975). This is not the sort of argument which constitutes fundamental error requiring review absent any objection at trial. This contention is overruled.

The judgment is affirmed.

ROBERTS, J., concurs in the result.

ONION, Presiding Judge, concurring.

I reluctantly concur in the result reached. The question of whether the evidence is sufficient to show that the rape was aggravated under the terms of V.T.C.A., Penal Code, § 21.03, is presented. The fact situation is similar to that of *Rogers v. State,* 575 S.W.2d 555 (Tex.Cr.App.1979), where the conviction was reversed because the evidence did not show the rape to be aggravated. The question presented is close.

V.T.C.A., Penal Code, § 21.02 (Rape), in effect at the time of the offense, reads as follows:

"(a) A person commits an offense if he has sexual intercourse with a female not his wife without the female's consent.

"(b) The intercourse is without the female's consent under one or more of the following circumstances:

"(1) he compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances;

"(2) he compels her to submit or participate by any threat that would prevent resistance by a woman of ordinary resolution;

"(3) she has not consented and he knows she is unconscious or physically unable to resist;

"(4) he knows that as a result of mental disease or defect she is at the time of the intercourse incapable either of appraising the nature of the act or of resisting it;

"(5) she has not consented and he knows that she is unaware that sexual intercourse is occurring;

"(6) he knows that she submits or participates because she erroneously believes that he is her husband; or

"(7) he has intentionally impaired her power to appraise or control her conduct by administering any substance without her knowledge.

"(c) An offense under this section is a felony of the second degree."

V.T.C.A., Penal Code, § 21.03, provides, in pertinent part, as follows:

"(a) A person commits an offense if he commits rape as defined in Section 21.02 of this code . . . and he:

"(1) causes serious bodily injury or attempts to cause death to the victim or another in the course of the same criminal episode; or

"(2) compels submission to the rape by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone."

Thus, before rape can become aggravated rape, it must be alleged and proven that the aggravating circumstances exist.

The indictment alleged that on or about October 20, 1974 appellant did:

". . . knowingly and intentionally by force and threats have sexual intercourse with P_____ O_____, a female not his wife, without the consent of the said P_____ O_____ and the said Defendant did then and there knowingly and intentionally compel the said P_____ O_____ to submit to the said act of sexual intercourse by the threat of death and serious bodily injury to be imminently inflicted on the said P_____ O_____ . . . ."

It is seen then that it is alleged that appellant committed the offense of aggravated rape by threat of death and serious bodily injury.

The evidence reflects that as the prosecutrix left a public telephone booth on the night of the offense she was approached by the appellant, who said something she did not understand. He grabbed her arm and placed a sharp object at the back of her neck and said he wouldn't hurt her if she would do what he said. She felt a strong pain in her arm where the appellant grabbed her. She did not know what the sharp object was and never did see it. She stated it felt like a knife, but admitted that there was a real possibility that it wasn't a knife.

Appellant dragged the prosecutrix to his nearby car and told her to sit in the driver's seat. She did and was then told to move to the passenger's seat. She related she struggled unsuccessfully but did not scream because of fear. Appellant locked the door and proceeded to drive. He asked the prosecutrix her name and told her he wanted to "make love" to her. After they had driven about half a mile, appellant gave the prosecutrix a marihuana cigarette and told her to smoke it, and she did because she was afraid not to do so. He told her several times he wouldn't hurt her if she did what he told her to do.

Appellant made several stops during which he talked to various people but did not leave the car. At one stop he acquired glasses and poured wine into them and offered one to the prosecutrix, which she took and sipped. Eventually, appellant took the prosecutrix to an apartment where he locked the doors after their entry. After a brief conversation, appellant took the prosecutrix to an upstairs bedroom where he removed her clothes and his and raped her. He then returned the prosecutrix to the location from which she had been abducted. She returned to her apartment nearby, made an outcry to her roommate and the police were called.

The evidence is clearly sufficient to show rape, and the appellant does not contend otherwise. He contends it was not shown to be aggravated rape as alleged. The prosecutrix testified that at no time did the appellant threaten to kill or make any threat of death, thus the inquiry is limited to whether there was a threat of serious bodily injury.

V.T.C.A., Penal Code, § 1.07(a)(34), defines serious bodily injury as:

" 'Serious bodily injury' means bodily injury that creates a substantial risk of

death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

In the instant case the appellant placed an unidentified object against the prosecutrix' neck and told her she would not be "hurt" if she did what he told her. This statement was repeated several times during the time the prosecutrix was with the appellant. She never saw the object placed against her neck, nor did she at any time see a knife or other weapon in appellant's hands or on or about his person. She testified that she was not hit, punched or mistreated in any way other than the rape itself, and that she had not suffered any injuries or bruises.

In *Rogers v. State,* supra, the defendant struck the prosecutrix in the face when she answered the door. She was knocked back against a table and onto the floor, told to take her clothes off and then she was raped. The prosecutrix stated that the defendant did not display any weapon, did not threaten to kill her, and did not hit or hurt her after he first appeared at her door. She related he did threaten to "hurt" her if she wasn't quiet or didn't keep her "mouth shut." Her visible injuries were two black eyes and a swollen nose, which were x-rayed at the hospital.

In *Rogers v. State,* supra, the court wrote:

"The cases above illustrate the proof necessary for a finding of a threat of serious bodily injury. In each case where this Court held the evidence was sufficient to support a conviction under Sec. 21.03, there was a showing that a gun or knife was used, or a threat to kill the victim was made, or serious bodily injury was inflicted, or a combination of two or more of these factors. (Footnote omitted.) Only in *Blount,* [524 S.W.2d 164] supra, where the proof did not show that any of these three acts had occurred, did the Court fail to find the evidence supported a conviction for aggravated rape. In the present case, as in *Blount,* no showing has been made that any weapon

was used, or a threat to kill made, or serious bodily injury inflicted.

"The injuries testified to by the prosecutrix were not serious bodily injuries as defined by Sec. 1.07(a)(34), supra. Her own testimony also establishes that no threat on her life was made, nor was any knife, gun, or other weapon used. We find that the evidence was insufficient to prove the aggravated circumstances required under Sec. 21.03, supra."

In *Rogers,* as in the instant case, there were no serious bodily injuries and no threats of death. In both cases the only threat was to "hurt" and neither prosecutrix saw any gun, knife or other weapon. The difference is that in the instant case the appellant placed a sharp object that felt like a knife against the prosecutrix' neck when the initial threat was made. Further, the evidence reflects that a police officer found a putty knife in the car that appellant had been using several hours after the alleged offense. When it is considered that threats may be communicated by actions and deeds, as well as words, *Seaton v. State,* 564 S.W.2d 721 (Tex.Cr.App.1978); *Church v. State,* 552 S.W.2d 138 (Tex.Cr.App.1977), and when the evidence is viewed in the light most favorable to the jury's verdict, I concur in the result reached.