**Gilbert Walker WHITCHURCH, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 65745, 65746.**

Court of Criminal Appeals of Texas, En Banc.

May 18, 1983.

**423**

Thomas C. Railsback, Dallas, for appellant.

Henry Wade, Dist. Atty., Stanley Keeton, Andy Anderson and R.R. Smith, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. States Atty., Austin, for the State.

## OPINION

PER CURIAM.

These are appeals from convictions for rape (Cause No. F–79–5690–JP) and aggravated rape (Cause No. F–79–6542–HP). The cases were tried together. The jury assessed punishment at confinement in the Texas Department of Corrections for ten years and forty years, respectively. The appellant asserts in four grounds of error that: the trial court abused its discretion in limiting appellant's discovery of medical reports; the trial court erred in denying appellant's motion for mistrial based on the prosecutor's improper jury argument; the trial court erred in denying appellant's motion for mistrial based on the prosecutor's improper have you heard questioning; and the evidence was insufficient to prove that the rape in Cause No. F–79–6542–HP was aggravated.

The record reflects that on May 23, 1979, the victim, D____ R____ was working as a clerk in a convenience store located in Irving. At approximately 12:00 a.m. on that date the appellant drove up in a wrecker and entered the store. He remained inside the store for about one hour, playing video games and drinking coffee. He then approached the victim and asked her to go into the back room. When she refused, the appellant picked her up and carried her to the storeroom. As the appellant picked her up she hollered and kicked at him, and she knocked a cookie jar off the counter. When the appellant reached the storeroom, he closed the door, removed the victim's clothing, and had intercourse with her on the floor of the storeroom. Following the act of sexual intercourse, the appellant left her in the storeroom and proceeded to the store counter where he swept up the glass from the broken cookie jar. The victim emerged

from the back room and went to the counter where she waited on a customer who had just then come into the store. The victim whispered to the customer to call the police. Subsequently, the police arrived and arrested the appellant as he attempted to leave in his wrecker. The appellant was indicted for the offense of rape in Cause No. F–79–890–JP on June 13, 1979.

The record also reflects that on June 28, 1979, E____ M____, was employed as a clerk at a convenience store in Irving. At approximately 4:00 a.m. on that date, the appellant drove up to the store in a wrecker, entered the store, and purchased a cup of coffee and a sandwich. He then came up behind the victim, put one arm around her, placed a knife against her neck, and told her to go into the storeroom. He followed her into the storeroom and had sexual intercourse with her. After completing the act of sexual intercourse, the appellant let the victim go into the bathroom. When she heard the front door open, she came out of the bathroom and noticed the appellant and the wrecker were gone. She then called the police and reported the incident. The appellant was arrested about one mile from the scene of the offense by Officer Simpson of the Irving Police Department, who found a knife on the front seat of the wrecker. The appellant was indicted for the offense of aggravated rape in Cause No. F–79–6542–HP on July 9, 1979.

The appellant's contention is that the evidence failed to show aggravation in the second rape. The indictment alleged that the appellant:

"... did unlawfully, intentionally and knowingly have sexual intercourse with E____ F____ M____, hereinafter called complainant, a female not his wife, without the consent of the complainant, and the defendant did intentionally and knowingly compel the complainant to submit to the said act of sexual intercourse by threatening serious bodily injury to be imminently inflicted on the complainant."

The appellant contends that the evidence was insufficient to establish that the appellant threatened the victim with serious bodily injury.

A threat of serious bodily injury can be communicated by action or conduct as well as by words. *Rogers v. State,* 575 S.W.2d 555 (Tex.Cr.App.1979). In *Rogers,* supra, it was held that absent an express verbal threat, the evidence was sufficient to prove aggravated rape under V.T.C.A. Penal Code, Sec. 21.03(a)(2), only when a gun, knife, or a deadly weapon was used, or serious bodily injury was in fact inflicted.

In the instant case, the victim testified that she was compelled to engage in the act of sexual intercourse when the appellant grabbed her from behind and placed a knife at her neck. During direct examination of the victim by the prosecutor, the following testimony was elicited concerning the appellant's exhibition of a knife during the offense in question:

"Q. Okay. You say he put one arm around you and then he put a knife up to your neck. Was that with the other hand?

"A. Yes.

"Q. So, he had both hands around you?

"A. Yes.

"Q. From the rear?

"A. Yes.

"Q. When he put the knife up to your neck, did he put the point of it against your neck or did he put the blade up against your neck, or did he actually touch your neck with it?

"A. Well, just barely.

"Q. He did touch your neck with it, though?

"A. Yes.

"Q. Was it a point or the blade?

"A. The blade.

"Q. The blade. All right. Could you see the knife when he brought it around in front of you before he stuck it up underneath your chin and to your throat?

"A. No.

"Q. Well, how do you know it was a knife?

"A. By the way it felt."

\* \* \* \* \* \*

"Q. What could you feel against your neck? I'm sorry, I said a point, but you said a blade earlier, didn't you?

"A. Well, it felt like it; a sharp knife."

On cross-examination the victim testified that she saw a silver flash; that it was *not* a fair statement to say that she really did not know that it was a blade against her throat; and that she could not see the knife handle, but that she did see the way the appellant's hand was gripped.

■ The testimony of the victim was sufficient to establish that the appellant exhibited a knife during the offense.[1] A positive identification of the object as a knife is not required in order to prove a threat of serious bodily injury. See *Berry v. State,* 579 S.W.2d 487 (Tex.Cr.App.1979).

■ The appellant argues that the victim's testimony that she did not *see* the knife at that time or thereafter during the act of sexual intercourse indicates that there was no ongoing threat of the imminent infliction of serious bodily injury. This Court held to the contrary in *Orosco v. State,* 590 S.W.2d 121 (Tex.Cr.App.1979) in which it was held that although a knife displayed to gain access into the victim's house was never again seen by the rape victim, the threat of its use continued, and the evidence was therefore sufficient to establish aggravated rape.

The failure of the victim to positively identify the knife or to observe the knife after the object was placed against her neck does not vitiate the evidence in the present case. The victim's testimony was sufficient to prove the object placed against her neck was a knife, and thus it was sufficient to prove a threat of serious bodily injury. The evidence was sufficient to sustain the conviction for aggravated rape.

The appellant contends that the trial court abused its discretion in limiting appellant's discovery of medical records relating to both of the victims. The appellant filed a motion for discovery in each case, requesting the production of any and all records reflecting the mental or physical condition of each victim following the two rapes. The trial court ruled that the district attorney should make available to the appellant any exculpatory portions of such records, but otherwise should produce them only if they were admitted or testified to during trial. The appellant argues that the limitation of his discovery constituted an abuse of discretion.

■ It is well recognized that a defendant does not have a general right to the discovery of evidence in the possession of the state. The decision as to what is discoverable is committed to the discretion of the trial court. *Quinones v. State,* 592 S.W.2d 933, cert. den. 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121, 1980; Art. 39.14, V.A.C.C.P. The legal standard employed in determining whether the trial court abused its discretion is *not* whether the error was harmless, but rather is whether the evidence sought is *material to the defense* of the accused. *Quinones v. State,* supra. In determining materiality, the omission must be evaluated in the context of the entire record and constitutional error is committed only if the omitted evidence creates a reasonable doubt that did not otherwise exist. *Quinones v. State,* supra; *Stone v. State,* 583 S.W.2d 410 at 415, in part quoting *United States v. Agurs,* 427 U.S. 97 at 112, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976).

■ We note that neither act of sexual intercourse was a disputed issue at trial; in fact, the appellant's defense was based solely on consent and insanity issues. The medical reports sought therefore would not have been material to the defense.

The trial court did in fact order the prosecutor to make any exculpatory portions of the medical records available. The court

---

1. The victim's testimony is corroborated by that of Sgt. Simpson of the Irving Police Department. Sgt. Simpson testified that when he arrested the appellant shortly after the aggravated rape was reported, he found a fixed blade knife on the front seat of the wrecker being driven by the appellant.

furthermore ordered the prosecutor to produce the reports at trial for an *in camera* inspection of the reports and for inspection by the appellant for cross-examination purposes in the event that the examining physician testified or the report became admissible in any other manner. The appellant's right to discovery under Art. 39.14, supra, was adequately protected by these actions of the trial court. The trial court did not abuse its discretion. See *Quinones v. State,* supra; *Mosely v. State,* 627 S.W.2d 770 (Tex.App.1981).

The appellant, furthermore, has not had those medical reports included in the record on appeal in order to show any matters contained therein which would be material to his defense. No error has been shown. *Brem v. State,* 571 S.W.2d 314 (Tex.Cr.App. 1978); *Pinson v. State,* 598 S.W.2d 299 (Tex. Cr.App.1980).

■ The appellant next complains of the prosecutor's jury argument during the punishment phase of the trial. That portion of the argument to which the appellant objected reads:

"He is a psychopath, a sociopath. He is as severe as he can get. On a scale of one to ten, he's a ten. He has absolute disregard for the rights and lives of others. He will kill and he will kill—"

The trial court sustained the appellant's objection and instructed the jury to disregard the comment.[2] Defense counsel stated in his motion for mistrial that he objected to the prejudicial nature of the argument and that the comment "fell well outside the evidence here." The trial court denied the request.

Careful examination of the record reveals that the argument was linked to evidence adduced at trial. During trial Dr. James Grigson, a court appointed psychiatrist testified concerning his examination of the appellant as follows:

2. The verbatim instruction given was as follows:

"The jury will disregard it and they will understand that you can only pass upon this case based upon testimony that you heard

"Q. Was Gilbert Walker Whitchurch's ability intact to discuss with you the circumstances that led him to where he is now?

"A. Yes, sir, he was.

"Q. What is your diagnosis of Gilbert Walker Whitchurch?

"A. Well, Mr. Whitchurch has a sexual deviate sociopathic personality disorder. This is not an illness. It's not a sickness. This is a descriptive term to describe an individual that has certain characteristics.

\* \* \* \* \* \*

"Q. What is a sociopath in general, Dr. Grigson?

"A. Well, the anti-social personality disorder or commonly called sociopath or psychopath, is an individual that does not have a conscience. We don't know why. But, these individuals do not feel guilty, remorse, like the rest of us do. They repeatedly break the rules. They are only interested in their own self pleasures and self gratification. They have disregard for, say, another person's property or, at times, even another person's life. Again, they are only interested in their own self pleasure at the cost of other people.

"Q. Are all sociopaths the same?

"A. Oh, no.

"Q. Now, do you distinguish—well, do they come in degrees?

"A. Yes, sir. You could put them on a scale of, say, like one to ten. You could use any scale, but you could say that there are those that only break relatively minor rules. In other words, you might have a sociopath that the only thing he will ever do is, say, do burglarizing and he's not going to ever become an armed robber or killer. He will stay at a level.

"Then, at the other end, say, the top of the scale, ten, you would have indi-

during the trial of the case, and if there's any dispute between the lawyers as to whether of not something was or was not testified to, then you will be the sole judges of what the testimony is."

viduals that are what I consider a severe sociopath, dangerous, because they have complete disregard for another human being's life. They will kill people repeatedly in terms of numbers, and they are more severe because they are not taking property or committing those type of crimes, but they are actually committing acts of violence against a person's life.

"Q. What kind of sociopath is Gilbert Walker Whitchurch—to what degree?

"A. Well, I think he's extremely dangerous with regard to other people's lives. It's not property. It would be other people's lives."

Based on the above testimony it appears to us that the prosecutor was commenting on evidence adduced at trial without objection and making a reasonable deduction from that evidence. This he is entitled to do, and no error is shown. *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.1973).

The appellant contends that the trial court erred in overruling appellant's timely motion for mistrial after an improper have you heard question was asked by the prosecutor. During the state's cross-examination of the appellant's brother the following colloquy was had:

"Q. Would you be surprised to learn that your stepmother says that throughout his childhood, your brother was unable to resolve any problems he had except through physical violence?

"DEFENSE COUNSEL: I object to that question on the basis I outlined earlier.

"THE COURT: I sustain the objection, and the jury will make no inference from the question.

"DEFENSE COUNSEL: Your Honor, in addition to the instruction, I would urge that that evidence be stricken from the record and I would urge at this time that because of the nature of the question and because of the prejudice attached to the question and because it was heard by the jury, that the Court declare a mistrial.

"THE COURT: Well, the Court will instruct the jury that they are not to consider the question or any effect whatsoever or any inference from the question as I have sustained the objection to the question, which effectively strikes it from the record as far as the jury is concerned, and your motion for mistrial is denied.

"DEFENSE ATTORNEY: Have my exception noted for the record, please, sir."

Any error was cured by the trial court's instruction to disregard. *Thomas v. State,* 578 S.W.2d 691 (Tex.Cr.App.1979); *Cavender v. State,* 547 S.W.2d 601 (Tex.Cr.App. 1977).

The judgments of the trial court are affirmed.

TEAGUE, J., concurs in the result.

CLINTON, Judge, dissenting.

It may very well be that the trial court did not abuse its discretion in ruling as it did on motion for discovery. However, the standard utilized by the majority for determining materiality of the medical records requested is not the correct one. And in that respect the analysis by a majority of the Court in *Quinones v. State,* 592 S.W.2d 933, 940–941 (Tex.Cr.App.1980) is similarly flawed.

When an accused requests disclosure through a motion for discovery, those who apply the "materiality" test of *Agurs* simply ignore precisely what the Supreme Court announced at the outset it was about to decide, *viz:*

"The question before us is whether the prosecutor's failure to provide defense with certain background information about Sewell [the deceased], which would have tended to support the argument that respondent acted in self-defense, deprived her of a fair trial under the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

The answers to the question depends on (1) a review of the facts, (2) the significance of *the failure of defense counsel to*

*request the material,* and (3) the standard by which the prosecutor's *failure to volunteer exculpatory material* should be judged."[1]

*United States v. Agurs,* 427 U.S. 97, 98–99, 96 S.Ct. 2392, 2395, 49 L.Ed.2d 342 (1976).

Then, after reviewing procedural background of the cause, the Supreme Court points out that the rule of *Brady v. Maryland,* supra, "arguably applies in *three quite different situations.*" The first is knowing use of perjured testimony by the prosecution, typified by *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). The second is illustrated by *Brady v. Maryland,* itself, and "is characterized by a pretrial request for specific evidence," *Agurs,* supra, 427 U.S. at 104, 96 S.Ct. at 2398. The third situation, "typified by this case, therefore embraces the case in which only a general request for 'Brady material' has been made," *id.,* at 107, 96 S.Ct. at 2399.

Along the way to reaching the question of whether the prosecutor "has any *constitutional* duty to volunteer exculpatory matter to the defense, and if so, what standard of materiality gives rise to *that duty,*"[2] *ibid.,* the Supreme Court observed that "[t]he test of materiality in a case like Brady in which specific information has been requested by the defense is not necessarily the same as in a case in which no request has been made," and noted that it "has not yet decided whether the prosecution has any obligation to provide defense counsel with exculpatory information when no request has been made."

When the question was reached, the Supreme Court answered it in Part III of its opinion, from which the test of materiality is drawn by the majority in the case at bar. But, as the Supreme Court itself made abundantly plain, that test is reserved for the "third situation" it described. What is before us now is not any aspect of a "constitutional duty to volunteer exculpatory matter to the defense," but a simple motion for discovery of known and readily available medical records.

As the *Agurs* opinion points out where there is a specific request, although there is no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, *Brady* means that constitutionally

"if the subject matter of such a request is material, or indeed *if a substantial basis for claiming materiality exists,* it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, *the failure to make any response is seldom,* if ever, *excusable.*"

*Agurs,* U.S. at 106, 96 S.Ct. at 2399.

In sum, a constitutional test of "materiality" should not be applied to a statutorily authorized motion for discovery specifying existing records, but if the majority insists on doing so it should at least apply the correct standard in such "second situation"—*Brady v. Maryland,* itself.

I respectfully dissent.

ONION, P.J., and MILLER, J., join.

---

**1.** All emphasis is supplied by the writer of this opinion unless otherwise indicated.

**2.** The *Agurs* opinion takes pains to emphasize that it was not considering "the scope of discovery" under Federal Rules of Criminal Procedure, but was dealing only with the due process right to a fair trial guaranteed by the Constitution. Conversely, here there is no need to address the constitutional duty for appellant invoked the statutory discovery procedure of Article 39.14, V.A.C.C.P. which surely provides a broader scope of discovery upon request than duty to disclose when only a general request, or none at all, has been made.