**Lawrence Lee WRIGHT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–81–0164–CR.**

Court of Appeals of Texas, Tyler.

Feb. 29, 1984.

Rehearing Denied March 22, 1984.

John W. Alexander, Winnsboro, for appellant.

Marcus D. Taylor, Quitman, for appellee.

COLLEY, Justice.

Wright was convicted of the offense of aggravated rape by a jury. Punishment was assessed by the jury at fifty years confinement. Wright seeks reversal based on six grounds of error contending that: (1) the evidence is insufficient to support his conviction for aggravated rape; (2) (3) the trial court erred in overruling his motions for instructed verdict; (4) (5) the trial court erred in failing to include the required culpable mental states in the court's abstract definition of the offenses of rape and aggravated rape; and (6) the trial court erred in receiving his written extrajudicial confession into evidence. We affirm.

In view of the contention made in his first ground, it is necessary to discuss fully the evidence in this case. The record shows that on January 1, 1981, at about 5:30 a.m. nineteen year old T_____ A_____ was returning home from work at a restaurant where she was employed as a part-time waitress. She drove north on U.S. Highway 69 towards Mineola where she lived with her parents. While driving on the highway she noticed a car on the shoulder in the southbound lane flashing its headlights off and on and in her words, "I turned my car around and went back to see if I could help in any way." She pulled beside Wright's vehicle, and he told her that he was out of gas and asked if she would take him to Mineola where he could obtain another vehicle. The prosecutrix allowed Wright to enter her vehicle and they

proceeded in the direction of Mineola. Wright then gave the prosecutrix directions to turn down an asphalt road. She drove approximately five miles from the highway to the location where the rape occurred at which time Wright told her to turn into a driveway. The prosecutrix did so whereupon Wright grabbed the car keys from the ignition switch after a brief struggle with the prosecutrix. The prosecutrix exited the vehicle and attempted to flee. She was grabbed by Wright and again she freed herself and attempted to re-enter the automobile and lock Wright out. She failed in this effort. After Wright re-entered the vehicle with the prosecutrix he then reached into the back seat of the vehicle and removed some clothing from a coat hanger and bent the coat hanger around and placed it over the prosecutrix' head and around her neck and told her to "cooperate." The record shows that this verbal threat was made repeatedly by Wright during the course of the rape, that is, "Cooperate, I don't want to have to hurt you." The prosecutrix was disrobed by Wright and the rape occurred with Wright holding the coat hanger wrapped around the prosecutrix' neck. When the rape was accomplished, Wright drove the prosecutrix in her vehicle to a car lot in Mineola where he exited the vehicle and released her. She went directly home, informed her parents of the rape and called the police. She then went to the hospital for a medical examination. The evidence shows that the prosecutrix received no serious bodily injuries during the course of the assaultive conduct of Wright.

The trial court conducted a *Jackson v. Denno* hearing on the admissibility of the confession. After hearing the testimony of the officers involved in taking Wright's statement and others who participated in his arrest and transportation from Dallas to Mineola as well as the testimony of Wright, the court found the statement to have been voluntarily made and admissible before the jury. Wright testified that after his arrest in Dallas for the rape he was beaten by two Dallas police officers. He did not explain the reason for the beating nor did he testify that the beating was administered by the Dallas police officers in an effort to coerce him to give a statement concerning the rape involved in this case. He testified further that he was picked up from the Dallas County Jail by Wood County Deputy Sheriff Michael Pehl and Sergeant Dale Welch of the Mineola Police Department and that during the return trip to Mineola Welch suggested, when Wright refused to talk about the rape charge, "Well let's just pull off the road, an old country road here, then we'll make him talk;" that Pehl said "no, we will turn him over to Chief Joe Bevill of the Mineola Police Department." Wright further testified to a prior encounter with Bevill stating that he previously had been threatened by Bevill saying, "... because myself and Mike Pehl and Joe Bevill had a run-in once before where he threatened me if we have any more dealings what he would do to me." Wright also testified that Bevill was at the police station in Mineola when he arrived from Dallas and at a time when he and Bevill were alone "... in there by ourselves...." Bevill "... went to reminding me of the last thing that we had had together, about what happened—what he said would happen...." and that Bevill stated to him "... so you are going to give me a statement about what happened, ain't you?" Wright testified that when he refused to talk, Bevill then stated, "... well, you know what I promised you that would happen to you and you know I'm just the man to do it." Wright then testified that he "... had just gotten beaten by two Dallas police in the Dallas jail and I don't want to get beat no more. So I went on ahead and signed the statement." The record shows that the statement described in Wright's foregoing testimony was an earlier statement signed by him in Mineola on January 2 or 3, 1981. Before he signed the statement dated January 13, 1981, Wright testified that Paul Nix, Criminal Investigator for the District Attorney of Wood County, reminded him that he had already given one statement at Mineola and that he could get "life in prison" but if he

would sign the January 13, 1981, statement they would "... knock off three of the charges...." On cross-examination Wright testified that Bevill threatened him four months before saying, "... he could kill me and play like I tried to escape...." and that on that occasion Bevill reminded him of such prior occasion by saying, "... he asked me did I remember what he had told me back those four months ago about what he would do to me. He asked me did I remember it." Wright further testified that several Wood County officers visited him in jail urging him to talk to the District Attorney, "plead out" and "get it behind me," and advising him that if he "... didn't make a deal with them, I was going to get life out of it."

All of the officers named by Wright, except Welch who was no longer with the Mineola Police Department, as the ones who threatened him testified at the hearing. All of such officers categorically denied making any threats against Wright or any promises to him for light treatment if he would sign the statements. The Dallas policemen who allegedly beat Wright of course were never identified and did not testify and the State did not produce any testimony contradicting Wright's testimony concerning the beatings he received in Dallas.

Wright's statement dated January 13, 1981, was read to the jury after the State excised portions thereof relating to extraneous offenses. Under the provisions of the statement Wright clearly confesses his guilt as to rape. In addition, the statement reads in part: "I snatched off the rest of her clothes. She was getting back into the car. I reached into the back seat and got a clothes hanger, and I opened it up as if to put it around her neck. I might have put it around her neck; I don't remember."

Wright contends under his first ground of error that the evidence is insufficient to support his conviction for aggravated rape. Texas Penal Code Section 21.02 (Vernon 1974)[1] provides that "A person commits [rape] if he has sexual intercourse with a

female, not his wife, without the female's consent." Section 21.03(a)(2) provides that a person commits [aggravated rape] "... if he commits rape as defined in Section 21.02 ... and he: compels submission to the rape by threat of death, serious bodily injury ... to be imminently inflicted on anyone." "Serious bodily injury" is defined in Section 1.07(a) as "... bodily injury that creates a substantial risk of death...." Wright contends that the decisions of the Texas Court of Criminal Appeals in *Rogers v. State*, 575 S.W.2d 555 (Tex.Cr.App.1979), and *Rucker v. State*, 599 S.W.2d 581 (Tex.Cr.App.1980), mandate a reversal of this cause.

▬▬ Wright points out correctly that a coat hanger is not a deadly weapon per se. He also contends that "... the State introduced no evidence whatsoever showing it [the clothes hanger] to be a deadly weapon." Section 1.07(a)(11) provides in pertinent part: " 'deadly weapon' means: (b) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Wright also points out that the State produced no lay or expert testimony to the effect that the coat hanger was capable of causing serious bodily injury, and that in fact the prosecutrix was not injured by the assault. In *Rogers* and *Rucker, supra,* the victims of the rape were beaten by the assailants with their fists and no weapons were used, and no express verbal threats to kill or do serious bodily injury were made and no serious bodily injury as defined under Section 1.07(a)(7), (34) inflicted on the victims. In our view *Rogers* and *Rucker* are not controlling here. In the instant case, a *weapon was used.* Repeatedly, the prosecutrix here was warned by Wright that he did not want to hurt her and that she should cooperate, i.e., submit. In addition Wright bent a coat hanger around the victim's neck. It is well settled that threats can be communicated by acts and conduct as well as by words. *Rogers v. State, supra; Most v. State,* 386 S.W.2d 537 (Tex.Cr.App.1965). We have concluded that Wright's act in

---

1. All references to sections are to Texas Penal Code (Vernon 1974) unless otherwise indicated.

placing the coat hanger around the victim's neck, coupled with his conduct occurring before the rape was accomplished, together with the verbal threats repeatedly made, are sufficient to support his conviction for aggravated rape. Certainly reasonably intelligent and rational jurors possess sufficient knowledge to decide whether or not a crude garrote placed around the victim's neck was capable of causing death or serious bodily injury. We conclude that the evidence in this cause relating to the manner of the use of the coat hanger as a garrote was sufficient to support the jury's finding that it was capable of causing serious bodily injury to the victim. The fact that no bodily injury was actually inflicted upon her proves only the efficacy of the threat to compel the victim's submission to the rape. Grounds of error 1, 2 and 3 are overruled.

Narrowly construed, Wright's grounds of error 4 and 5 allege that the trial court reversibly erred in refusing, over his objection, to include the requisite culpable mental states of "intentionally or knowingly" in its abstract definition of rape and aggravated rape in paragraphs 1 and 2 of the charge. Indulging in a liberal construction of his grounds as argued in his brief, we perceive that Wright is contending that the charge is fundamentally defective because paragraph 4 thereof, applying the law of aggravated rape to the facts of this case, fails to clearly require the jury, before it could convict him of aggravated rape, to find that he committed the offense "intentionally or knowingly" as required by the provisions of Section 21.03(a)(2) and Section 6.02.

■ A culpable mental state is an essential element of aggravated rape. *Ex parte Perez*, 612 S.W.2d 612 (Tex.Cr.App.1981); and a charge authorizing the jury to convict a defendant of that offense without a finding that the offense was committed with the requisite culpability would be fundamentally defective. *Evans v. State*, 606 S.W.2d 880, 883 (Tex.Cr.App.1980).

In discussing this contention we deem it appropriate to quote the pertinent provisions of paragraphs 1, 2 and 4 of the charge:

### 1.

Our law provides that a person commits rape if he has sexual intercourse with a female not his wife, without the female's consent.

The intercourse is without the female's consent if he compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or, if he compels her to submit or participate by any threat communicated by actions, words, or deeds, that would prevent resistance by a woman of ordinary resolution, under the same or similar circumstances, because of a reasonable fear of harm.

### 2.

A person commits aggravated rape if he commits rape, as defined above and he compels submission to the rape by threat of serious bodily injury to be imminently inflicted on anyone.

### 4.

If you find from the evidence beyond a reasonable doubt that on or about the 1st day of January, 1981, in Wood County, Texas, the defendant, LAWRENCE LEE WRIGHT, did then and there intentionally or knowingly, by threats and force, and without her consent, as defined in Paragraph 1 above, have sexual intercourse with T_____ A_____, a female who was not his wife, and you further find that LAWRENCE LEE WRIGHT compelled submission to said rape by threats of serious bodily injury to be imminently inflicted on T_____ A_____, then you will find the defendant, LAWRENCE LEE WRIGHT, guilty of aggravated rape.

Unless you so find, or if you have a reasonable doubt thereof, you will find the defendant not guilty of aggravated rape, and proceed to consider whether

the defendant is guilty of the lesser offense of rape.

■ Wright in statements and arguments set forth in his brief contends that the reference to paragraph 1 contained in paragraph 4 and reading "... as defined in paragraph 1 above, ..." refers the jury to the court's definition of rape. Such construction of that language is patently wrong. The language clearly refers to the court's definition and explanation of the factual circumstances under which an act of sexual intercourse is "without the female's consent" under Section 21.02(b)(1), (2). The trial court could have very well omitted making the reference to paragraph 1 or could have charged "without the consent as that term is herein defined of the said T-A-" but the court chose rather to make an express reference to that portion of the charge where the element of rape, viz., "without the female's consent" was explained. We cannot conclude that such reference rendered the charge in any manner ambiguous or misleading. The court's charges are to be read and considered as a whole as Wright concedes. *Daniel v. State*, 486 S.W.2d 944 (Tex.Cr.App.1972). It is also well-settled law that the court's charge and the language used therein must be given a reasonable and not a strained or unreasonable construction. *Christian v. State*, 71 Tex.Crim. 566, 161 S.W. 101 (1913). Further, the fact that the offense of aggravated rape was abstractly defined in the language of the statute without including a culpable mental state does not amount to an error for which the case must be reversed. The requisite culpable mental state was charged in paragraph 4 in which the court applied the law of aggravated rape to the facts. *Gonzales v. State*, 466 S.W.2d 772, 775 (Tex.Cr.App.1971).

We have carefully examined the indictment in this cause and find that it is not fundamentally defective but properly charged the offense of aggravated rape. *Hawkins v. State*, 628 S.W.2d 71 (Tex.Cr. App.1982). In addition, from our examination of the court's charge as a whole in this case, we find that the charge is not funda-

mentally defective. *Jason v. State*, 589 S.W.2d 447, 449 (Tex.Cr.App.1979); *Lugo-Lugo v. State*, 650 S.W.2d 72, 77 (Tex.Cr. App.1983). Wright's grounds 4 and 5 are overruled.

■ Wright claims that his written confession bearing date of January 13, 1981, was involuntary, and should not have been placed in evidence before the jury. We have heretofore fully discussed the evidence respecting the taking of the confession. Wright contends that his uncontroverted testimony that following his arrest in Dallas on January 1, 1981, he was physically beaten by two unidentified Dallas policemen, as well as his testimony that he gave a written confession in Mineola (not introduced) because he had been threatened by police officers and he was "altogether scared"; and that such threats and the previous beating at the hands of the Dallas police, renders the confession involuntary. As earlier observed in this opinion, the Dallas police officers were not identified and did not testify at trial. Hence, Wright's account of the beating by the Dallas police officers is uncontroverted. Wright argues that by reason thereof, the confession of January 13, 1981, should have been suppressed. Wright's account of the beating he was subjected to in Dallas does not include any testimony by him that the beating was administered in an effort to coerce his confession to the aggravated rape of the prosecutrix. Nothing in the record connects the beatings he received in Dallas with either of the two statements given by Wright. We reject Wright's argument. *Smith v. State*, 547 S.W.2d 6 (Tex.Cr.App.1977). As stated, all police officials involved in transporting Wright to Mineola (other than Welch) and in taking his two statements testified positively that no threats or promises of any kind were made to induce Wright to sign the two statements confessing to the offense here involved. On such conflicting testimony, the trial judge as the trier of the facts, was authorized to believe the officers and to disbelieve Wright. We find no

abuse of discretion by the trial judge. Ground six is overruled.

The judgment of the trial court is affirmed.