**Billy Ray ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 53221.**

Court of Criminal Appeals of Texas.

May 3, 1977.

Dan J. Anderson, Richardson, for appellant.

Henry. Wade, Dist. Atty., John Tatum, Braden W. Sparks and John William Booth, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for aggravated sexual abuse in which the punishment was assessed by the jury at ninety-nine (99) years in the Department of Corrections.

In two grounds of error appellant challenges the sufficiency of the evidence to sustain the conviction, and in a third ground contends the indictment is fatally defective.

The record reflects that the complaining witness, Charles Douglas Hedrick, was arrested during October, 1974, for failure to pay a fine imposed as a result of a misdemeanor marihuana conviction.

The jail tank in the Dallas County jail where appellant was placed consists of several separate cells, each capable of housing eight inmates, which are opened during the daytime onto a dayroom. After having been in jail for 20 days and 3 days prior to the alleged offense, Hedrick was first approached by Henry Albert Bradshaw, an inmate and co-defendant of the appellant. Bradshaw made sexual advances to Hedrick, telling him he was "sweet" and that he would like to have sexual relations with him. Bradshaw threatened to beat Hedrick to get him to submit, but Hedrick, who was approximately the same size as Bradshaw, rebuffed Bradshaw by saying that he would fight. Bradshaw continued to harass Hedrick by grabbing him on the arm and leg, inviting him to move into Bradshaw's cell and asking him to be Bradshaw's "ole lady."

On the same day, October 25th, Hedrick first came into close contact with the appellant, Billy Ray Rogers, who was substantially larger than Hedrick. Rogers stated that he had been informed Hedrick was "going to kick his ass." Hedrick disclaimed any knowledge of such statement. Rogers approached Hedrick again on October 26th, and stated someone was "trying to get us to fight" and suggested Hedrick move to his (appellant's) cell for protection, but Hedrick kept "putting him off." On October 27th appellant delivered an ultimatum. Hedrick related the appellant told him "to get my shit and move it in the cell or to get out in the dayroom and he was going to kick my ass." Hedrick moved into appellant's cell, and shortly thereafter Bradshaw moved into the same cell.

Nothing occurred on the night of October 27th. On the next night, after the inmates had been locked in their cells for the night, Hedrick was making coffee when without warning appellant hit him in the face, knocking him to the ground. Hedrick related he would have defended himself, but the blow rendered him "off balance and sightless." Appellant continued to beat Hedrick with his fists and feet. Over the next two hours there were some five series of beatings, interrupted only when the guard came by. Hedrick was hit with a plastic bottle and two or three times the appellant picked him off the floor and slammed his head into the cell bars, saying, "I'm going to brain you this time." He was also kicked in the groin and became extremely nauseated. The appellant continued to beat Hedrick about the face until one of the inmates suggested appellant "would pick up a case" because marks on the face could be easily identified by pictures "and stuff like that."

During the beatings when a guard was heard approaching Hedrick was told to clean up his face by wiping the blood off his face and to turn in the opposite direction from the guard. Hedrick was told by appellant that if he made "any motion towards the guard or anything like that by the time they got around to letting me out that he would kill me." After the second series of beatings, Hedrick was told to take off his bloody clothing, and when they thought a guard was approaching Hedrick was hidden under a bunk because there was no time to clean him up. When the guard did not materialize, Hedrick was pulled out and the beatings continued. After the fourth series, Hedrick passed out for a few minutes.

While appellant initially attacked Hedrick without warning, by the time of the second series of beatings appellant told Hedrick he was either going to "fight or fuck," indicating and referring to Bradshaw, who was nearby and who would nod, smile and appeared excited. This statement was continually repeated and Hedrick understood it to mean that he had to submit to Bradshaw or keep getting beaten. Hedrick, who said he was unable to fight back, kept saying he would fight and the beatings continued.

After the fifth series of beatings, Bradshaw told Hedrick he might as well give up. Hedrick stated he was in a great deal of pain from his groin and his chest after two hours of beatings and concluded "it would be easier to give in than to be beaten to death."

Hedrick laid down on a bunk, believing he was shoved by the appellant. There Bradsaw assaulted him, resulting in contact

and penetration between the genitals or the penis of Bradshaw and the anus of Hedrick. When the assault was completed, the appellant asked if "anybody else in the cell . . wanted some." Hedrick related, however, that neither the appellant nor any of the other inmates bothered him thereafter. He did not sleep all night.

The next morning when Jail Guard R. F. Tucker entered the area where Hedrick was he saw Hedrick standing at the door "shaking real bad, his hands were trembling . . . ." Tucker separated Hedrick from the other inmates by placing him in a safety port cell and reported the incident. Chief Jailor Macaluso and Georgia Parks, a nurse, also testified that when they observed Hedrick shortly after his release from the cell he was having difficulty breathing and was badly shaken. Bruises were observed all over his body. A large knot was found on the right side of his head, and numerous knots could be felt under the hair on his head.

In the first ground of error appellant contends there is a variance between the indictment and the proof. He argues the indictment alleged lack of consent to have been a result of compulsion by threat while the proof shows the compulsion was by force, and thus the State failed to show complainant submitted to the act of deviate sexual intercourse because of the threat of imminent infliction of death.

█ When the sufficiency of the evidence is challenged, this court is required to view the evidence in the light most favorable to the verdict. *Clark v. State*, 543 S.W.2d 125 (Tex.Cr.App.1976); *Morgan v. State*, 503 S.W.2d 770 (Tex.Cr.App.1974). The jury had before it testimony that Hedrick was beaten by appellant, a much larger man, over a period of two hours, and he was threatened with death if he made any outcry. Threats accompanied the beatings, which included Hedrick having his head slammed against the cell bars two or three times while the appellant stated, "I'm going to brain you this time." Hedrick finally submitted after the fifth series of beatings because of the pain he was suffering and

because it would be "easier to give in than to be beaten to death." He stated he believed he was threatened with imminent death.

█ While the evidence may reflect that the use of force accompanied the verbal threats made to the complainant, that fact does not create a variance. The term "threats" is not limited to the use of verbal aggression, but may include acts amounting to an offer to use future force. Threats may be communicated by actions, words or deeds. In the record before us we find the jury had ample evidence to conclude that Hedrick submitted because he was "threatened with imminent infliction of death."

█ Appellant next argues that the evidence fails to prove sufficiently that appellant acted with intent to promote or assist the commission of the act of deviate sexual intercourse by Bradshaw. Appellant cites V.T.C.A., Penal Code, § 7.02.

First, we observe that V.T.C.A., Penal Code, § 21.04, provides in part that:

"(a) A person commits an offense if, without the other person's consent and with intent to arouse or gratify the sexual desire of any person, the actor:

"(1) —

"(2) *Compels the other person* to engage in sexual intercourse or deviate sexual intercourse *with a third person*, whether the other person is of the same sex as or opposite sex from the third person. . . . " (Emphasis supplied.)

V.T.C.A., Penal Code, § 7.02 (Criminal Responsibility for Conduct of Another), provides in part:

"(a) A person is criminally responsible for an offense committed by the conduct of another if:

"(1) —

"(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or . . . ."

Appellant did all of the beating of Hedrick, telling him he had to "fight or fuck," indicating Bradshaw, who would nod, smile and appear excited. After Hedrick lay on the bunk where he believed the appellant shoved him, Bradshaw assaulted him. Then the appellant inquired if any of the other inmates "wanted some." The evidence is more than sufficient to show that the appellant acted with intent to promote or assist the commission of the act charged.

Appellant's contention is without merit.

Appellant advances the contention that the State failed to allege and prove each element of the offense charged beyond a reasonable doubt. The thrust of appellant's argument is that V.T.C.A., Penal Code, § 21.05, prescribes that a person commits the offense of aggravated sexual abuse if he commits sexual abuse as defined in § 21.04 of the Penal Code and commits certain aggravating conduct as set forth in subsections (1) and (2) of § 21.05(a). He urges that the State failed to allege or prove one of the enumerated non-consensual acts as set forth in V.T.C.A., Penal Code, § 21.04(b)(1–7), essential to an allegation and proof of sexual abuse.

■ There was no motion to quash or set aside the indictment, so appellant must rely upon the indictment being fundamentally defective. See *American Plant Food Corporation v. State*, 508 S.W.2d 598 (Tex.Cr. App.1974).

■ Omitting the formal parts, the indictment charged the appellant:

" . . . did then and there unlawfully knowingly and intentionally, by threatening the imminent infliction of death to Charles Douglas Hedrick, compel Charles Douglas Hedrick, a person not the spouse of Henry Albert Bradshaw, to engage in deviate sexual intercourse with Henry Albert Bradshaw without the consent of Charles Douglas Hedrick, by con-

tact between the genitals of Henry Albert Bradshaw and the anus of Charles Douglas Hedrick with intent to arouse sexual desire of Henry Albert Bradshaw . . . ."

V.T.C.A., Penal Code, § 21.04, as originally enacted [1] and in effect at the time of the alleged offense, reads:

"(a) A person commits an offense if, without the other person's consent and with intent to arouse or gratify the sexual desire of any person, the actor:

"(1) engages in deviate sexual intercourse with the other person, not his spouse, whether the other person is of the same or opposite sex; or

"(2) compels the other person to engage in sexual intercourse or deviate sexual intercourse with a third person, whether the other person is of the same sex as or opposite sex from the third person.

"(b) The intercourse is without the other person's consent under one or more of the following circumstances:

"(1) the actor compels the other person to submit or participate by force that overcomes such earnest resistance as might be reasonably expected under the circumstances;

"(2) the actor compels the other person to submit or participate by any threat that would prevent resistance by a person of ordinary resolution;

"(3) the other person has not consented and the actor knows the other person is unconscious or physically unable to resist;

"(4) the actor knows that as a result of mental disease or defect the other person is at the time of the deviate sexual intercourse incapable either of appraising the nature of the act or of resisting it;

1. Said § 21.04 was amended in 1975 (Acts 1975, 64th Leg., p. 477, ch. 203, § 2, eff. Sept. 1, 1975). Among other things, Subsection (b)(2) was amended to read:

"(2) the actor compels the other person to submit or participate by any threat, communicated by actions, words, or deeds, that would prevent resistance by a person of ordinary resolution, under the same or similar circumstances, because of a reasonable fear of harm . . . ."

"(5) the other person has not consented and the actor knows the other person is unaware that deviate sexual intercourse is occurring;

"(6) the actor knows that the other person submits or participates because of the erroneous belief that he is the other person's spouse; or

"(7) the actor has intentionally impaired the other person's power to appraise or control the other person's conduct by administering any substance without the other person's knowledge.

"(c) An offense under this section is a felony of the second degree."

The form of § 21.04 follows that of V.T. C.A., Penal Code, § 21.02 (Rape). Subsection (b) of § 21.04 repeats the list of facts negating consent set out in § 21.02 (Rape). Here pertinent is the Practice Commentary to § 21.02 which reads in part:

"Subsection (b)(2) deals with threats and basically preserves Penal Code art. 1185, which provided that 'the threat must be such as might reasonably create a just fear of death or of great bodily harm, in view of the relative condition of the parties as to health, strength and other circumstances of the case.' Although this article spoke of fear of death or great bodily harm, it was not so applied. In recent cases, fear for the safety and mental health of the victim's children was deemed a sufficient threat, e. g., *Most v. State*, 386 S.W.2d 537 (Tex.Cr. App.1965). Moreover, the wording of art. 1185 did not indicate whether the threat must be against the female or some third person, but the court in *Torbert v. State*, 166 Tex.Cr.R. 311, 313 S.W.2d 303 (1958), held that threats against the victim's children were included. Subsection (b)(2) focuses on the effect of the threat, thus avoiding these difficulties in prior law."

V.T.C.A., Penal Code, § 21.05 (Aggravated Sexual Abuse), provides:

"(a) A person commits an offense if he commits sexual abuse as defined in Section 21.04 of this code or sexual abuse of a child as defined in Section 21.10 of this code and he:

"(1) causes serious bodily injury or attempts to cause death to the victim or another in the course of the same criminal episode; or

"(2) compels submission to the sexual abuse by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone.

"(b) An offense under this section is a felony of the first degree."

If it can be argued that appellant's contention has any validity, we observe that the allegation that Hedrick was compelled to submit by being threatened with the imminent infliction of death would be inclusive of "any threat that would prevent resistance by a person of ordinary resolution." V.T.C.A., Penal Code, § 21.04(b)(2) (in effect at the time of the alleged offense). And proof of a threat of death to be imminently inflicted would reflect a threat that would prevent resistance by a person of ordinary resolution.

It is also observed that the indictment in the instant case is in substantial compliance with the suggested forms in Morrison and Blackwell, New Texas Penal Code Forms, p. 18; 2 Branch's Texas Anno. Penal Statutes, 3rd Ed., § 21.05, p. 138. See also McClung's Jury Charges for Texas Criminal Practice (Indictments and Informations), 1976, p. 251.

We conclude the language from *Gray v. State*, 77 Tex.Cr.R. 221, 178 S.W. 337, 339 (1915), is here appropriate. There the court wrote:

"  .  .  . We think the indictment, as written, is unquestionably of that certainty which will enable the accused to plead the judgment herein given upon it in bar of any other prosecution for the same offense; also that it charges the offense in such ordinary and concise language as to have enabled appellant or any other person of common understanding to know what is meant, and to give her notice of the particular offense with which she was charged, and to enable the court to pronounce the proper judgment of conviction.  .  .  . " See also *Moore v. State*,

473 S.W.2d 523 (Tex.Cr.App.1971); Articles 21.04 and 21.11, Vernon's Ann.C.C.P.

We conclude that the indictment was not fundamentally defective nor subject to a motion to quash if one had been made.

The contention is without merit.

The judgment is affirmed.