# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00758-CR

**John Edward Cantu, III, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
NO. B-04-0705-5, HONORABLE BEN WOODWARD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant John Edward Cantu, III guilty of aggravated assault with a deadly weapon and assessed punishment, enhanced by two previous felony convictions, at thirty years' imprisonment. *See* Tex. Pen. Code Ann. § 22.02(a)(2) (West Supp. 2006). Appellant challenges the sufficiency of the evidence in a single point of error. We will affirm the conviction.

Appellant's point of error urges that the trial court erred by overruling his motion for an instructed verdict of acquittal. This contention is, in effect, a challenge to the legal sufficiency of the evidence. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). In his prayer for relief, however, appellant asks this Court to reverse and remand for a new trial. In the interest of justice, we will treat the point of error as a challenge to both the legal and factual sufficiency of the evidence.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (factual sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040, at *30-31 (Tex. Crim. App. Oct. 18, 2006); *Johnson*, 23 S.W.3d at 11.

The jury found that appellant intentionally or knowingly threatened Samantha Aguirre, with whom he had once been romantically linked, with imminent bodily injury while using or exhibiting a firearm. Samantha testified that on the day in question she was staying with her former husband, Nick Aguirre, and their children at Nick's house in San Angelo. Shortly after Nick left the house with the

children to take them to school and then go to work, appellant called and told Samantha that he was coming to get her. She testified, "He was furious. He insisted that I was going to leave with him whether I wanted to or not. Obviously, he had had a confrontation with my brother the evening before and it didn't go the way he had wanted it to. So he wanted me to see what he was going to do to my brother . . . for crossing him." Appellant told Samantha that "he was a couple of minutes away from where I was at and that I was going to leave with him. He was going to take me so I could see what he was going to do to my brother." Samantha said that she did not know what had happened between appellant and her brother, but appellant "was very angry."

Immediately after the call ended, Samantha called her brother and "told him the threats that were given to me to him. And then I hung up with my brother and I called my ex-husband to please come home." Samantha testified that she had no doubt that appellant was coming to get her and that she had never been so scared in her life. In his own testimony, Nick said that Samantha "sounded very scared" when she called him and that he immediately "took off toward the house."

Five or ten minutes after appellant called Samantha, he arrived at the Aguirre house in his pickup. Samantha watched him through a crack in the door as he walked to the front porch carrying what proved to be a shotgun. Appellant called out, "Come on, Samantha." When asked by the prosecutor if appellant pointed the gun at her, she answered, "When I opened the door, it was right there, ma'am, right at me." Later, during cross-examination, she insisted that the shotgun "was pointed at me." Samantha testified that she "[m]ost definitely" felt threatened by appellant's conduct.

Nick Aguirre drove up before appellant could step onto the front porch. When Nick yelled at him, appellant turned without saying another word, walked back to his pickup truck, and drove away. Nick testified that he did not see appellant point the shotgun at Samantha.

3

Appellant contends that the State failed to prove that he threatened Samantha Aguirre with imminent bodily injury. He argues that he did not verbally threaten her and that, while a threat can be conveyed in a nonverbal manner, the evidence that he walked up to the house while carrying the shotgun was not sufficient to support the jury's determination that he threatened Samantha with a firearm. He contrasts the evidence in this case with that held sufficient in earlier prosecutions. *See Horn v. State*, 647 S.W.2d 283, 285 (Tex. Crim. App. 1983) (holding that evidence defendant swung, hit, nicked, flicked, and nipped at complainant with knife was sufficient to prove threat of imminent bodily injury); *Berry v. State*, 579 S.W.2d 487, 489-90 (Tex. Crim. App. 1979) (holding that evidence defendant grabbed complainant's arm and pressed flat, sharp object against her neck was sufficient to prove threat of serious bodily injury); *Church v. State*, 552 S.W.2d 138, 141 (Tex. Crim. App. 1977) (holding that evidence defendant grabbed complainant and held knife to her throat was sufficient to prove threat of serious bodily injury).

We agree that appellant's conduct is distinguishable from the conduct of the defendants in the opinions cited by appellant. And this case might present a close question if, as appellant would have it, the evidence showed *only* that he walked up to the Aguirre house while carrying the shotgun. But that is not all the evidence shows. Before driving to the house, appellant called Samantha and, obviously furious, told her that he was "coming to get her" and that she "was going to leave with him whether [she] wanted to or not." Minutes after making this verbal threat to kidnap Samantha, by force if necessary, appellant arrived at Samantha's residence, approached it while carrying a shotgun, and demanded that she come with him. When Samantha opened the door, appellant pointed the shotgun at her. Viewing all the evidence in the light most favorable to the verdict, we conclude that it is legally

4

sufficient to support a finding beyond a reasonable doubt that appellant threatened Samantha Aguirre with imminent bodily injury, and that he did so while using or exhibiting a firearm.

Appellant testified that he was not in San Angelo on the day of the alleged offense. In addition, two months after the alleged incident Samantha executed an affidavit, admitted in evidence by the defense, stating that she had been abusing drugs, that appellant "never was at my house," and that appellant never threatened her with a firearm. Samantha explained that she made this affidavit after being asked to do so by appellant and his mother. Obviously, the jury did not believe this defensive evidence. Giving the jury's credibility determination the deference it is due, we do not believe that the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or that the verdict is against the great weight and preponderance of the available evidence.

Finding the evidence to be both legally and factually sufficient to support the jury's verdict, we overrule the point of error and affirm the judgment of conviction.

_____

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed: December 21, 2006

Do Not Publish