ACCEPTED
12-13-00386-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
2/10/2015 10:57:08 PM
CATHY LUSK
CLERK

Cause No. 12-13-00386-CR

In the Court of Appeals for the
Twelfth Judicial District at Tyler, Texas

RECEIVED IN
12th COURT OF APPEALS
TYLER, TEXAS
2/10/2015 10:57:08 PM
CATHY S. LUSK
Clerk

Willie Owens, III.,
Appellant

v.

State of Texas,
Appellee

FILED

2/10/2015

Twelfth Court of Appeals
Cathy Lusk
Clerk

On Appeal from Cause No. 2013-0215 in the 159h
Judicial District Court of Angelina County, Texas

**State's Brief**

April Ayers-Perez
Assistant District Attorney
Angelina County D.A.'s Office
P.O. Box 908
Lufkin, Texas 75902
(936) 632-5090 phone
(936) 637-2818 fax
State Bar No. 24090975
aperez@angelinacounty.net

**Oral Argument Not Requested**

## Identity of Parties and Counsel

Willie Owens, III., Appellant
TDCJ #01899793
Lyncher Unit
2350 Atascocita Road
Humble, Texas 77396

John D. Reeves
Counsel for Willie Owens, III.
　　　(trial)
1007 Grant Ave.
Lufkin, Texas 75901

Albert Charanza, Jr.
Counsel for Willie Owens, III.
　　　(appeal)
P.O. Box 1825
Lufkin, Texas 75902

Katrina Carswell
Attorney for the State (trial)
Angelina County District Attorney's
　　Office
P.O. Box 908
Lufkin, Texas 75902

April Ayers-Perez
Attorney for the State (appeal)
Angelina County District Attorney's
　　　Office
P.O. Box 908
Lufkin, Texas 75902

# Table of Contents

Identity of Parties and Counsel ................................................................. ii

Table of Contents ................................................................................iii

Index of Authorities ............................................................................ v

Statement Regarding Oral Argument............................................................vii

Issues Presented .................................................................................vii

Statement of Facts................................................................................ 1

Summary of the Argument ....................................................................... 6

Argument ........................................................................................7

**Reply Issue #1: The evidence presented at trial was sufficient to corroborate the offenses.**............................................7

**Reply Issue #2: The evidence was legally sufficient to support the conviction** ................................................................7

Standard of Review ....................................................................9

Appellant had direct links to CI buy.........................................10

**Reply Issue #3: The State did not fail to disclose exculpatory evidence, the evidence in the CI's file was not exculpatory** ........................................................................11

Standard of review.................................................................11

The file of the CI was not exculpatory .....................................13

Prayer ............................................................................................. 14

Certificate of Compliance ............................................................... 15

Certificate of Service ..................................................................... 15

# Index of Authorities

**Cases**                                                                Page

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2012) ...........................9

*Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2004)...............................8

*Cruz v. State*, 838 S.W.2d 682 (Tex. App. – Houston [14th Dist.] 1992, pet. ref'd) ................................................................................................12

*Hampton v. State*, 86 S.W.3d 603 (Tex. Crim. App. 2002) ........................12

*Jackson v. Virginia*, 443 U.S. 307 (1979) ...................................................9

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) .............................8

*Malone v. State*, 253 S.W.3d 253 (Tex. Crim. App. 2008)....................10 ,11

*Michaelwicz v. State*, 186 S.W.3d 601 (Tex. App. – Austin, 2006) ............12

*Scruggs v. State*, 18 S.W.3d 277 (Tex. App.—Austin 2000, pet ref'd).......12

*Temple v. State*, 390 S.W.3d 341 (Tex. Crim. App. 2013).....................9, 10

*Whitchurch v. State*, 650  S.W.2d 422 (Tex. Crim. App. 1983).................12

**Statutes**

Tex. Pen. Code Ann. § 39.14(West 2011). .................................................12

**Rules**

Tex. R. App. P. 39.1 ...............................................................vii

## Statement Regarding Oral Argument

Pursuant to Tex. R. App. P. 39.1, the State feels oral argument is unnecessary, as the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

## Issues Presented

**Reply Issue #1:** **The evidence presented at trial was sufficient to corroborate the offenses**

**Reply Issue #2:** **The evidence was legally sufficient to support the conviction**

**Reply Issue #3: The State did not fail to disclose exculpatory evidence, the evidence in the CI's file was not exculpatory**

## Statement of Facts

On several occasions in 2012 Officer Bob Scott and Investigator Scot Hamel, both with the Lufkin Police Department, met with a confidential informant (hereinafter referred to as "CI") to purchase narcotics.[1] This CI was known to Officer Scott and had worked with Officer Scott on numerous other occasions with numerous other individuals.[2] On May 23, 2012 (Count III.) Officer Scott and Investigator Hamel took part in a delivery between a CI and the appellant, Willie Owens, III.[3] Officer Scott and Investigator Hamel picked up the CI from his residence, searched the CI for drugs and money, and then wired the CI with a recording device.[4] The CI was then given $160 by Officer Scott and Investigator Hamel and then proceeded to call the appellant, who advised he would meet the CI at Cherry's grocery store.[5] The CI usually referred to the appellant by a nickname, some of which were "Big Boy" and "Fat Boy".[6] The appellant then proceeded to change the meeting location to his residence, where Officer Scott dropped off the CI a few blocks away from.[7] Officer Scott, Investigator Hamel, and Sergeant

---

[1]    V R.R. at 9-10.
[2]    *Id*. at 25.
[3]    *Id*. at 11.
[4]    *Id*.
[5]    *Id*.
[6]    *Id*. at 12.
[7]    *Id*. at 13.

1

Anthony Mitchon were all listening to the recording device the CI was wearing.[8]

The CI signaled that the deal had been consummated, at which point Officer Scott

picked the CI up and the CI was searched for the drugs he bought and the money.[9]

The CI had no money on him, the entire $160 had been given to the appellant, and

the CI turned over the drugs to Officer Scott.[10]

On June 5, 2012 (Count IV.) Officer Scott, Investigator Hamel, and Sergeant

Mitchon met with the same CI who stated he would call the same person from the

May 23, 2012 buy, "Fat Boy", and purchase another $160 worth of crack.[11]

Officer Scott searched the CI while Sergeant Mitchon and Investigator Hamel

searched the CI's vehicle.[12] The CI then proceeded to call the same phone number

as on May 23, 2012 and met the appellant at the same residence in which he met

him on May 23, 2012.[13] Once again, the CI went inside the residence with $160,

met with the appellant, and came back out with a controlled substance.[14] Officer

Scott reviewed the audio and video recordings of the May 23, 2012 and June 5,

2012 incidents and found they both corroborated both what he said and what he

---

[8]  *Id.* at 13-14.
[9]  *Id.* at 15.
[10]  *Id.* at 15-16.
[11]  *Id.* at 17.
[12]  *Id.*
[13]  *Id.*
[14]  *Id.* at 18-19.

remembers.[15]  Both the audio and video from May 23, 2012 and June 5, 2012 were admitted into evidence.[16]

Officer Scott confirmed that the CI was reliable and credible, and that in all the instances the CI has been used in the past he had been truthful with the Officers, never miscounted his money, and never came up short in his buys.[17] Officer Scott estimated this CI had made around 100 buys for him in the past.[18]

Investigator Scot Hamel then testified to the buys he was involved in, which were all five counts that the appellant was indicted and convicted on – May 10, 2012 (Count I.), May 14, 2012 (Count II.), May 23, 2012 (Count III.), June 5, 2012 (Count IV.), and July 16, 2012 (Count V.).[19]  On May 10, 2012 Investigator Hamel, after a transaction had been set up between the CI and the appellant, then supplied the money to the CI, put the audio and video recorder on the CI, and drove the CI to the location of the drug transaction.[20]  Investigator Hamel confirmed that in the downloaded video and audio of the transaction none of the audio and video was lost.[21]  The license plate of the vehicle that the buy took place

---

[15]     *Id*. at 21.
[16]     *Id*. at 25.
[17]     *Id*. at 26-27.
[18]     *Id*. at 34.
[19]     *Id*. at 40-42.
[20]     *Id*. at 44-45.
[21]     *Id*. at 47.

3

in was traced back to the appellant.[22] After the buy Investigator Hamel picked up the CI and searched him for money and drugs after the CI handed over the drugs he bought.[23]

On May 14, 2012 (Count II), Investigator Hamel set up with the same CI as in the previous cases and dropped him off at the same location as one of the previous cases to make a buy with the appellant.[24] After the buy took place and the CI turned over the evidence, Investigator Hamel searched the CI and his car for money and drugs and did not find either.[25] Investigator Hamel also noted that the CI used the same vehicle for this buy that he used for the first buy.[26] After the CI finished the buy, and turned over the controlled substance he purchased, the CI was searched by Investigator Hamel, Sergeant Mitchon, and Officer Scott for drugs and money, neither of which was found.[27] Investigator Hamel also went into detail in regards to the buy that occurred on July 16, 2012 (Count V.).[28] This buy took place at the appellants residence, where other buys alleged in the indictment also occurred.[29] Investigator Hamel explained that it is common for a dealer to start out dealing to a person in a public place and then move to dealing from their residence,

---

[22] *Id*. at 49.
[23] *Id*. at 49-50.
[24] *Id*. at 51-52.
[25] *Id*. at 52.
[26] *Id*. at 53.
[27] *Id*. at 54.
[28] *Id*. at 55.
[29] *Id*.

4

as has occurred with the appellant.[30] The place of residence used during the buys in counts III., IV., and V. were connected to the appellant because the water bill was in the appellant's name, then using the name that was on the water bill, Investigator Hamel pulled up a photo and made a comparison to the video of the buy, and it showed to be the same person.[31] During the third buy, on May 23, 2012, the appellant pointed out which residence was his, which was the residence used in the buys.[32] During the buy that occurred on July 16, 2012 (Count V.), the appellant did not have enough cocaine to constitute the one gram that was agreed upon, so the CI paid only $90.[33]

The CI did not have any pending cases with the District Attorney's Office and was not working covertly for law enforcement in exchange for any sort of legal promise.[34]

Valentine Hernandez, the CI used in all five of these counts, next testified. Hernandez confirmed that Investigator Hamel, Officer Scott, and Lieutenant Mitchon accompanied him on each of the five buys listed in the indictment for which the appellant was convicted.[35] In all five buys with which the appellant has been convicted, Hernandez would call the appellant in the presence of law

---

[30]    *Id.* at 55-56.
[31]    *Id.* at 56.
[32]    *Id.* at 57.
[33]    *Id.* at 58-59.
[34]    *Id.* at 73-74.
[35]    *Id.* at 115-16.

5

enforcement and at the direction of law enforcement in order to set up the buy.[36]

Hernandez confirmed that not only did he set up all five buys with law enforcement, but he met the appellant at the washateria for the buys in counts one and two, and at the appellant's house and vehicle for the remaining buys.[37] Hernandez confirmed that in all five buys the appellant handed him the cocaine directly, putting it directly in his hands.[38] Hernandez also confirmed that while he does get paid, monetarily, by law enforcement for his work as a CI, he also has an objective to help get drugs off the street and that is one of the underlying desires for him to continue helping law enforcement.[39]

## Summary of the Argument

The evidence presented at trial is sufficient to corroborate the offenses based on informant testimony, it is legally sufficient to support a conviction on all five counts for possession of a controlled substance with the intent to deliver, and the State did not fail to produce exculpatory evidence to the defense.

Although a CI was used to complete the drug buys from the appellant, the buys were audio and video recorded and other factors besides just the CI testimony and law enforcement testimony linked the appellant to the drug buys. The buys occurred in a public place, in the appellant's vehicle, and at the appellant's home.

---

[36]     *Id*. at 116.
[37]     *Id*. at 119-25.
[38]     *Id*. at 129.
[39]     *Id*. at 139-40.

Law enforcement was able to link the appellant to his vehicle through car registration records, to the residence through property records, and was able to link the appellant's face through his driver's license photograph. Furthermore, the court was able to hear and view all of the buy videos, which were admitted into evidence, and was able to directly link the picture and voice of the appellant.

The appellant's CI file used by law enforcement was not exculpatory. The only information contained in it – the payment records of the CI, signing of waivers, and other CI names – was not exculpatory evidence. Further, all of the information contained in the CI's file was discussed extensively during trial by both the State and the defense, as well as the CI and both law enforcement officers. Even if disclosed to the appellant, the file would not have led to a reasonable probability that the outcome would be any different.

## Argument

**Reply Issue #1: The evidence presented at trial is sufficient to corroborate the offenses based on informant testimony and the testimony of law enforcement officers**

**Reply Issue #2: The evidence presented at trial is legally sufficient to sustain a conviction on all five counts of possession of a controlled substance with intent to deliver**

7

## *Standard of Review*

Sufficiency of the evidence in a bench trial is measured by a standard analogous to the "hypothetically correct jury charge" standard, which includes the statutory elements of the offense as modified by the charging instrument.[40] Such a charge would be one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[41]

In this case, the charging instrument (indictment) alleged:

COUNT I
Defendant, on or about the 10th day of May, A.D. 2012, … did then and there, knowingly possess, with intent to deliver, a controlled substance; namely, cocaine, in an amount of less than one gram[42]

COUNT II
Defendant, on or about the 14th day of May, A.D. 2012, … did then and there, knowingly possess, with intent to deliver, a controlled substance; namely, cocaine, in an amount of gram or more but less than four grams[43]

COUNT III
Defendant, on or about the 23rd day of May, A.D. 2012, … did then and there, knowingly possess, with intent to deliver, a controlled substance; namely, cocaine, in an amount of one gram or more but less than four grams[44]

---

[40] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2004).
[41] *Malik,* 953 S.W.2d at 240.
[42] V R.R. at 5.
[43] *Id*. at 6.
[44] *Id*. at 7.

COUNT IV

Defendant, on or about the 10th day of May, A.D. 2012, … did then and there, knowingly possess, with intent to deliver, a controlled substance; namely, cocaine, in an amount of one gram or more but less than four grams[45]

COUNT V

Defendant, on or about the 10th day of May, A.D. 2012, … did then and there, knowingly possess, with intent to deliver, a controlled substance; namely, cocaine, in an amount of less than one gram[46]

The State must prove every element of the crime charged beyond a reasonable doubt.[47] In reviewing the legal sufficiency of the evidence to support a conviction, the court considers the evidence in the light most favorable to the verdict to determine whether the fact-finder was rationally justified in finding guilt beyond a reasonable doubt.[48] When evaluating the sufficiency of the evidence, the court must presume the trier of fact resolved any conflicts in the evidence in favor of the verdict and defer to that resolution.[49]

A criminal conviction may be based upon circumstantial evidence and circumstantial evidence alone can be sufficient to establish guilt.[50] In circumstantial evidence cases, not every fact and circumstance needs to point "directly and independently to the defendant's guilt."[51] If the conclusion is

---

[45]   *Id.*

[46]   *Id.* at 7-8.

[47]   *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979).

[48]   *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[49]   *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2012).

[50]   *Temple*, 390 S.W.3d at 359.

[51]   *Id.*

supported by the "combined and cumulative force" of all the incriminating circumstances, the evidence is sufficient to establish guilt.[52]

*Appellant Had Direct Links to CI Buy*

In *Malone v. State* the Court of Criminal Appeals held that, although the accomplice testimony standard would be applied to cases involving confidential informants, "[p]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction."[53] In the *Malone* case the non-covert agent evidence (law enforcement testimony) established that the appellant was searched prior to the buy for drugs or money, supplied with an audio recording, driven to the buy location, provided with cash to purchase drugs, returned to the law enforcement agents, and was further checked for drugs and money.[54] These series of events were enough to convince the Court of Criminal Appeals that there was a sufficient link between the appellant and the delivery of the controlled substance.

In this case, the CI, Hernandez, was not only wired with an audio recorder, as in the *Malone* case, but the CI also had a video recorder, both of which were

---

[52] *Id.*

[53] *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

[54] *Id*. at 258-59.

10

admitted into evidence. Furthermore, like in *Malone* where there was a connection with voices, the court was able to hear the voices in these tapes to determine if there was a sufficient connection. On top of that, two of the buys occurred at the residence of the appellant, just like in *Malone*, and one of the buys occurred in a vehicle owned by the appellant. All of the buys came about after the CI called the same phone number. This is sufficient to prove that the appellant was not just "merely present" when the drug transaction was made, the audio and video recordings prove that there is corroborating evidence to sufficiently link the appellant to the five drug transactions as charged. Furthermore, differentiating this case is that the CI, Hernandez, testified at the bench trial of appellant. When the CI testified he corroborated all of the information that the law enforcement officers – Investigator Hamel and Officer Scott – had testified to. Lastly, the appellant was linked to the residence of the buys through the water bill, which was in his name, and from there a driver's license photo from the Department of Public Safety was pulled up on the name of "Willie Owens, III.", whom the water bill came back to, and it matched the person in all five buy videos as well as the person sitting in court identified as the defendant.[55]

**Reply Issue #3: The State did not fail to disclose exculpatory evidence, the evidence in the CI's file was not exculpatory**

---

[55] *Id*. at 56.

*Standard of Review*

There is no general right to discovery of evidence in the possession of the State for a defendant in a criminal case.[56] Under Article 39.14, limited statutory discovery is allowed and has been provided for.[57] However, whether or not evidence is discoverable is a factor that has long been at the discretion of the trial court.[58] "To invoke *Brady* and its progeny, the accused must present evidence that (1) the prosecution suppressed or withheld evidence; (2) the evidence would have been favorable to the accused; and (3) this evidence would have been material to the accused's defense."[59] In light of *Brady*, the appellant would have the burden of showing that, in light of the new evidence, it is reasonably probable that there would be a different outcome at trial, had the prosecutor made a timely disclosure.[60] "A 'reasonable probability' is a probability sufficient to undermine the confidence in the outcome of the trial."[61]

---

[56]     *Michaelwicz v. State*, 186 S.W.3d 601, 612 (Tex. App. – Austin, 2006), citing *Scraggs v. State*, 18 S.W.3d 277, 294-95 (Tex. App. – Austin 2000, pet. ref'd).
[57]     TEX. CODE. CRIM. PROC. ANN. art. 39.14 (West 2011).
[58]     *Michaelwicz v. State*, 186 S.W.3d 601, 612 (Tex. App. – Austin, 2006), citing *Whitchurch v. State*, 650 S.W.2d 422, 425 (Tex.Crim.App. 1983).
[59]     *Michaelwicz v. State*, 186 S.W.3d 601, 612 (Tex. App. – Austin, 2006), citing *Cruz v. State*, 838 S.W.2d 682, 686 (Tex. App. – Houston [14th Dist.] 1992, pet. ref'd).
[60]     *Michaelwicz v. State*, 186 S.W.3d 601, 612 (Tex. App. – Austin, 2006), citing *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)
[61]     *Id*.

12

*The file of the CI was not exculpatory*

The file of the confidential informant contained payments made to the informant by law enforcement, the names of other confidential informants (which were redacted), file validation, CI's understanding of regulations, CI's biographical information, and the CI's consent to electronic surveillance.[62] Appellant argues that the CI began working for law enforcement in 2008 as opposed to 2012, and that the CI was paid for his work with law enforcement and worked with law enforcement prior to making his buys with the appellant. However, the CI, Hernandez, testified at trial that he was paid by law enforcement for his work as a CI.[63] Officer Bob Scott also testified that the CI, Hernandez, was paid for his work as a CI with law enforcement.[64] Investigator Scot Hamel also testified that the CI, Hernandez, was paid for his work as a CI with law enforcement.[65] Further, Investigator Hamel testified that this was not the first buy that law enforcement had done with the CI, "Every time that we used the informant [Hernandez], we used him for a year or two, and everything that he's done and brought back and told us, we've substantiated through evidence that we got on the video and the names and everything, the cases that we were provided that he worked. Everything he said

---

[62]    C.R. at 87-97.
[63]    V R.R. at 130, 139.
[64]    *Id*. at 25.
[65]    *Id*. at 72.

always matched up."[66]  The information found in the CI's file, his payments and amount of time working as a CI, was all brought up during the trial and cross-examined by the appellant.  Therefore, even if this court were to find that the CI's file was exculpatory, there is no reasonable probability that the outcome of the trial would have been any different had the CI's file been disclosed, because the contents of the file were discussed extensively throughout the trial in regards to payment to the CI and the amount of time the CI had worked with law enforcement as a CI.

## Prayer

The State of Texas prays that this Court of Appeals affirm the judgment of the trial court.

---

[66]  *Id*. at 75.

Respectfully Submitted,

/s/ April Ayers-Perez

Assistant District Attorney
Angelina County D.A.'s Office
P.O. Box 908
Lufkin, Texas 75902
(936) 632-5090 phone
(936) 637-2818 fax
State Bar No. 24090975
ATTORNEY FOR THE
STATE OF TEXAS

## Certificate of Compliance

I certify that this document contains 3,189 words, counting all parts of the document except those excluded by Tex. R. App. P. 9.4(i)(1).  The body text is in 14 point font, and the footnote text is in 12 point font.

/s/ April Ayers-Perez

## Certificate of Service

I certify that on February 10, 2015, a true and correct copy of the above document has been forwarded to Albert J. Charanza, Jr., counsel Willie Owens, III. on appeal, at P.O. Box 1825 Lufkin, Texas, 75902, via electronic service through efile.txcourts.gov.

/s/ April Ayers-Perez